Filed 3/20/26  P. v. Smith CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN SMITH III,<br><br>    Defendant and Appellant. | H051531<br>(Santa Clara County<br>Super. Ct. No. C2201059) |

Defendant John Smith III appeals from a judgment entered after he was convicted by a jury of arson, use of an explosive device with intent to injure, and two counts of assault with a deadly weapon.  Appointed counsel for Smith filed an opening brief which provides the procedural and factual background of the case but raises no legal challenge to the disposition.  Counsel asks this court to conduct an independent review of the record to determine whether there are any arguable issues.  (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Smith was advised of the right to file written arguments on his own behalf but has not responded.  Finding no arguable error that would result in a disposition more favorable to Smith, we affirm the judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Procedural background

On May 2, 2023, the Santa Clara County District Attorney's Office filed a first amended consolidated information charging Smith with one felony count of arson (Pen. Code,[1] § 451, subd. (d); count 1), one felony count of use of an explosive device with intent to injure (§ 18740; count 2), and two felony counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3, 4).

At the conclusion of the trial, the jury found Smith guilty on all counts.

The trial court sentenced Smith to a total term of two years and eight months, consisting of the lower term of two years on count 3 (assault with a deadly weapon), a consecutive term of eight months (one-third the middle term of two years) on count 1 (arson), and a concurrent lower term of two years on count 4 (assault with a deadly weapon). On count 2 (use of an explosive device with intent to injure), the court imposed the lower term of three years but stayed that punishment pursuant to section 654. The court awarded 732 days of credit (366 custody credits plus 366 conduct credits pursuant to section 4019) on counts 3 and 4, and 473 days of credit (237 custody credits plus 237 conduct credits pursuant to section 4019) on count 1. Based on those credits, the court deemed Smith's sentence served on all counts.

As to fines and fees, after finding that Smith had a current inability to pay, the trial court suspended a $300 restitution fine (§ 1202.4, subd. (b)), imposed and suspended an identical $300 parole revocation restitution fine (§ 1202.45), and waived both a court operations assessment of $160 (§ 1465.8) and a criminal conviction assessment of $120 (Gov. Code, § 70373).

---

[1] Unspecified statutory references are to the Penal Code.

After this court received Smith's *Wende* brief and independently reviewed the record, we requested supplemental briefing on whether we should remand this matter to the trial court to address the fines and fees imposed at Smith's sentencing hearing in light of *People v. Kopp* (2025) 19 Cal.5th 1 (*Kopp*), and the relevance, if any, of section 1237.2 to this issue.

### B. Factual background[2]

### 1. Evidence regarding January 27, 2022[3] offenses

San Jose Police Officer David Edward testified that, on January 27, at around 7:53 p.m., he responded to a report of a car fire in San Jose. When he arrived at the scene, Edward observed a vehicle on fire, with several neighbors attempting to extinguish the flames with garden hoses. The fire department arrived and put the fire out within a few minutes.

Edward spoke to a man, A.R.,[4] who reported that he had been attacked and injured. Edward saw that A.R. was bleeding from lacerations on his left ear and on the left side of his skull above his ear. A.R. told Edward that a "tall and heavy" "black male adult" hit him in the head with an "unknown object." Other individuals at the scene directed Edward to a nearby residence, approximately 50 feet away, where the assailant went after attacking A.R.

Edward went to the residence and Smith was standing in the front yard. Smith had his hands raised above his head and was wearing blue latex gloves. Edward arrested Smith.

---

[2] The defense did not call any witnesses or present any evidence.

[3] All dates are 2022 unless otherwise specified.

[4] We refer to the victims and witnesses, other than police officers and expert witnesses, by their initials to protect their privacy interests. (Cal. Rules of Court, rules 8.90(b)(4), (10), (11).)

In his subsequent investigation, Edward obtained surveillance footage from the area, which showed Smith starting the car fire with a Molotov cocktail and then assaulting A.R. with a metal pole as A.R. tried to extinguish the fire. Relevant portions of the surveillance footage were played for the jury and admitted into evidence.

A.R.[5] testified that he was walking on the street by his mother's home on January 27 when he saw a pickup truck drive past. The driver of the pickup threw a bottle with a "flaming tip" out of the window at a parked vehicle. A.R. testified that the bottle did not break, and he continued walking toward a nearby store. He heard an "explosion from a motor home near the hospital" and then an explosion behind him. A.R. saw a car on fire so he ran and grabbed a garden hose to try and put the fire out.

As A.R. was spraying water on the fire, Smith approached him. Smith did not say anything to A.R. but hit him in the legs, the back, and the head with an iron pipe. A.R. did not know how many times Smith hit him in the head. Smith left but A.R. did not see where he went.

A.R. was bleeding from a cut on his head and was taken to the hospital for treatment. Doctors gave him a tetanus shot, an injection for the pain, and closed the wound on his head with a "liquid" instead of staples. Although A.R. was prescribed pain medicine, he could not afford to fill that prescription, and his head injury caused him pain for approximately two months.

M.R., A.R.'s sister, testified that around 7:30 p.m. on January 27, she looked out the window of her home and saw a fire down the street. M.R. went

[5] The parties stipulated that A.R. was unavailable to testify pursuant to Evidence Code section 240 and his preliminary examination testimony was read into the record at trial. The jury was also informed that the parties stipulated that A.R. had been charged with felony vandalism and had previously been convicted of felony grand theft from a person, both of which are crimes of moral turpitude.

4

outside and saw A.R. running to nearby houses, looking for a hose. M.R. began approaching the fire, and she saw A.R. with a hose spraying water on the fire. As A.R. was trying to douse the fire, M.R. saw a man, whom she identified in court as Smith, attack A.R. with a metal pole, striking him in the head. M.R. yelled at Smith to stop but it was only after she said she was calling the police that he walked away.

V.V. testified that she was driving home from work on the evening of January 27 but could not park by her house due to the fire trucks and police cars that were blocking the street. The fire department was "spraying down [her] uncle's car" which was parked across the street from V.V.'s home. V.V. gave surveillance video from the camera at her house to the police.

L.T.V. testified that he drove his SUV to his brother's home around 7:00 p.m. on January 27. A half-hour after he arrived, L.T.V. heard his car alarm going off. L.T.V. went outside to see what was happening and saw that his vehicle was on fire. L.T.V. went back into the house and asked his brother for help. L.T.V. and his brother tried to put out the fire using a hose but were unsuccessful. The fire department arrived about five to ten minutes later and extinguished the fire. L.T.V's vehicle was completely destroyed.

San Jose Fire Department Investigator Laura Martello testified as an expert in arson investigation. Martello responded to the report of a suspected arson involving a vehicle on the evening of January 27. On examining the SUV, Martello determined that the fire originated beneath the front bumper rather than from inside the vehicle. Martello then described a portion of a surveillance video which showed a burning object on the ground that was then kicked by an unknown person toward the SUV, causing an explosion and fire. In Martell's opinion, the cause of the vehicle fire was a Molotov cocktail.

5

### *2. Evidence regarding February 6 offense*

Santa Clara County Sheriff's Deputy Tyler Oertle was working as a dorm officer at the Elmwood Correctional Facility on February 6. At around 3:10 p.m. that day, Smith and other inmates were in "program time," meaning they could participate in activities outside of their cells, such as showering, placing telephone calls, etc. Oertle saw Smith strangling another inmate, H.A., with a rolled up towel. Oertle intervened and told Smith to stop, which he did. Because Smith was significantly taller and heavier than H.A., Oertle did not believe that H.A. could have freed himself without assistance.

Surveillance video from the jail shows H.A. looking into the window of Smith's cell but not opening the door or attempting to enter the cell. Smith then approached H.A. from behind, taking a towel from around his shoulders and rolling it tight before wrapping it around H.A.'s neck. H.A. struggled to escape but could not until Oertle intervened.

### II. DISCUSSION

In their supplemental briefing letters, the parties agree that, pursuant to *Kopp*, where a trial court imposes fines *exceeding* the statutory minimum of $300 under section 1202.4, subdivision (b), and section 1202.45, it must consider the defendant's ability to pay. (*Kopp*, *supra*, 19 Cal.5th at p. 30.) In this case, the trial court, after finding that Smith had a current inability to pay, suspended the statutory minimum $300 restitution fund fine (§ 1202.4, subd. (b)) and the parole revocation fund restitution fine (§ 1202.45).

The parties also agree that, before imposing ancillary costs pursuant to section 1465.8, subdivision (a)(1) and Government Code section 70373, *Kopp* instructs that equal protection principles require the trial court to, on defendant's request, consider a defendant's inability to pay such costs. (*Kopp*, *supra*, 19 Cal.5th at p. 30.) Here, the trial court found Smith lacked the ability to pay and

6

waived both the court operations assessment (§ 1465.8) and the criminal conviction assessment (Gov. Code, § 70373).

Finally, the parties agree that section 1237.2 is not applicable here. Accordingly, there is no basis for remanding the matter to address the fines and fees imposed at Smith's sentencing.

Pursuant to *Wende, supra*, 25 Cal.3d at p. 436, we have reviewed the entire record. We find no arguable error that would result in a disposition more favorable to Smith.

### III. DISPOSITION

The judgment is affirmed.

_____
WILSON, J.

WE CONCUR:

_____
GROVER, ACTING P. J.

_____
LIE, J.

*People v. Smith*
H051531